IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIOUS RAY WHITEN, JR.,

      Petitioner,                    No. CIV S-08-3039 GEB DAD P

    vs.

D.K. SISTO, Warden,

      Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding with counsel on an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The amended petition before the court challenges petitioner's 2005 judgment of conviction entered in the Sacramento County Superior Court for one count of possession of a sawed-off shotgun in violation of California Penal Code § 12022 and one count of being a felon in possession of a firearm in violation of California Penal Code § 12021. Petitioner seeks federal habeas relief on the ground that his trial counsel rendered ineffective assistance.

        Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

1

PROCEDURAL BACKGROUND

On November 30, 2005, a Sacramento County Superior Court jury found petitioner guilty of possession of a sawed-off shotgun and being a felon in possession of a firearm.[1] (Notice of Lodging Documents on November 20, 2009 (Doc. No. 18), Reporter's Transcript on Appeal ("RT") at 1112-13.) Following his conviction, petitioner was sentenced on April 7, 2006, to a state prison term of twenty-five years to life. (Id. at 1157.)

Petitioner appealed his judgment of conviction to the California Court of Appeal for the Third Appellate District. On September 7, 2007, the judgment of conviction was affirmed. (Resp't's Ex. 1 (Doc. No. 17) at 2 of 5).[2] Petitioner then filed a petition for review with the California Supreme Court. (Resp't's Lod. Doc. 1.) On December 12, 2007, the California Supreme Court denied that petition. (Id.) Petitioner thereafter filed a petition for writ of habeas corpus with the California Supreme Court. (Resp't's Lod. Doc. 2.) That petition was denied on June 10, 2009. (Resp't's Lod. Doc. 3.)

On December 15, 2008, petitioner filed a federal habeas petition in this court challenging his state court conviction on the grounds that: (1) his Fourth Amendment rights were violated by an unlawful search and seizure, and (2) his Sixth Amendment rights were violated when he received ineffective assistance of counsel. (Doc. No. 1.) On August 18, 2009, the undersigned found that petitioner's Fourth Amendment claim failed to state a cognizable claim for purposes of federal habeas review. (Doc. No. 6.) With respect to his Sixth Amendment claim the court found that it appeared that petitioner may have exhausted the claim in state court

---

[1] Petitioner was also found not guilty of one count of kidnaping in violation of California Penal Code § 207(a), one count of false imprisonment in violation of California Penal Code § 236, one count of assault with a firearm in violation of California Penal Code § 245(a)(2), one count of assault with a deadly weapon or by means of force likely to produce great bodily injury in violation of California Penal Code § 245(a)(1), one count of robbery in violation of California Penal Code § 211, and one count of attempting to dissuade a witness by threat of force or violence in violation of California Penal Code § 136.1(c)(1). (RT at 1110-13.)

[2] Page number citations such as this one are to the page number reflected on the courts CM/ECF system and not to page numbers assigned by petitioner.

1 while this federal petition was pending. (Id.) Petitioner was therefore given thirty days to file an
2 amended federal habeas petition setting forth his exhausted Sixth Amendment claim or, in the
3 alternative, to file a status report indicating that his Sixth Amendment claim was still pending
4 before the California Supreme Court. (Id.) On September 17, 2009, petitioner filed the amended
5 petition now before this court. (Doc. No. 8- "Am. Pet.") Respondent filed an answer on
6 November 20, 2009. (Doc. No. 17-"Answer.") Petitioner has not filed a traverse.

## FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> At the suppression hearing, Officer Robert Mueller testified that he and Officers Gin and Dionne were dispatched to investigate a reported assault. The victim, Michael Sunahara, told them that [petitioner], who was Sunahara's neighbor, was the assailant.
>
> The officers then went to [petitioner's] house to conduct further investigation. While Officer Dionne spoke with [petitioner], a woman named Jennifer Jacinto, who was [petitioner's] fiancée, told Officer Mueller that their house had been burglarized the night before and that she believed Sunahara was the perpetrator. Sunahara had lived in [petitioner's] house for about a week but had moved out when he was unable to pay the rent. Jacinto showed Officer Mueller the damage caused by the burglary, including holes in the guest bedroom wall, and a kicked-in door in the master bedroom.
>
> The officers then returned to Sunahara's house. When Officer Gin told him about the allegations, Sunahara said that [petitioner] had handcuffed and assaulted him with a .45-caliber pistol and that [petitioner] kept the pistol and a sawed-off shotgun at his house. According to Sunahara, the likely location of the pistol was in a black zippered case in the nightstand in [petitioner's] master bedroom, or inside the living room couch, or inside one of the cars. The shotgun was either under the master bedroom bed or in one of the cars.
>
> At this point, Officer Mueller returned to [petitioner's] home to look for the weapons and to further investigate the alleged burglary. When Jacinto answered the door, Officer Mueller told her he had seen something at Sunahara's house that might have caused the holes in the guest bedroom and asked to see the damage

again. Jacinto showed him to the guest bedroom. After a few moments, Mueller said he did not think the object at Sunahara's house had caused the damage after all, and suggested it might have been caused by some object in [petitioner's] house. He asked Jacinto to show him the rest of the damage, and she led him to the master bedroom to view the kicked-in door.

When they reached the bedroom, Officer Mueller asked if there were any weapons in the house. Jacinto responded that she was not aware of any. Mueller then asked if he could search for weapons. Jacinto consented.

Officer Mueller began searching under the bed and in the nightstand drawer, as Sunahara had suggested. In the drawer, Mueller found a box of "sex toys." Since Sunahara had mentioned that he was handcuffed during the assault, Mueller asked Jacinto whether she owned any handcuffs. According to Jacinto, at this point she told Mueller that she was feeling uncomfortable with the search.

Officer Mueller went into the garage and, after obtaining Jacinto's consent to search the cars, began to search inside a Cadillac. He found a black nylon pistol case containing two magazines and some loose .45-caliber ammunition on the front seat, but he had difficulty opening the trunk. Jacinto indicated that she was uncomfortable with the search, and Mueller reminded her that she had given her consent. When Jacinto asked if she could have a friend present during the search, Mueller agreed and stopped while they waited for the friend.

About 15 to 25 minutes later, Jacinto's friend, Shayla Ray, arrived at the house. The two women engaged in a brief discussion, and then they asked Officer Mueller at what point could they request a warrant. He explained "they could ask for a warrant at any time, that that was their right." Mueller also mentioned that he would like to give both [petitioner] and Sunahara the benefit of the doubt by conducting the search, and by proving there were no weapons. If he did not search and there was a gun, Jacinto could have liability. For example, "if it's in the trunk of the car and she gets stopped and the police have reason to search, they find the pistol, she's liable for that pistol being in her car and she might wind up under arrest." Furthermore, if her house was burglarized again and the intruder found the gun, she would be responsible for another weapon "getting out on the street." Jacinto and Ray told Mueller he could continue to search, and stayed with him while he proceeded.

While searching in a laundry basket and a refrigerator in the guest bedroom, Officer Mueller discovered some .45-caliber bullets and a box of .38-caliber ammunition. Neither Jacinto nor her friend asked the officer to stop the search.

> Officer Mueller attempted to open the Cadillac's trunk one more time and, after discovering a lock switch on the dash, he was successful. Inside the trunk, he found a loaded sawed-off shotgun and a .45-caliber pistol.

(Resp't's Ex. 1 ("Opinion") at 2-3.) At his trial, petitioner testified that he took possession of the shotgun as collateral for the money Sunahara owed petitioner as a result of the damage Sunahara caused when Sunahara broke into petitioner's home. (RT at 769-72.)

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

/////

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

Petitioner claims that because he had suffered several prior convictions within the meaning of California's Three Strikes Law and was facing a potential third strike, he inquired of his trial counsel about the possibility of a plea agreement. (Am. Pet. at 29.) Petitioner asserts

that his trial counsel stated that he had formerly been employed by the District Attorney's Office and had worked closely with a deputy district attorney who later became a "supervisor" in that office. (Id.) Petitioner alleges that his counsel told him that this same supervisor was now "in charge of overseeing petitioner's case." (Id.) Petitioner's trial counsel reported that he and this supervisor had a "falling out" when petitioner's trial counsel left the District Attorney's Office. (Id.) According to petitioner, his counsel told him that the supervisor "indicated to [petitioner's] trial counsel that he was going to 'bury petitioner'" as a result of the falling out. (Id.) Petitioner also states that his trial counsel told him that there was "no point in attempting to secure a plea because petitioner was facing his third strike, and a deal would not be offered." (Id. at 30.)

Petitioner argues that his trial counsel had a conflict of interest due to his personal history with the District Attorney's Office, specifically his relationship with the supervisor overseeing petitioner's case, and that this conflict "precluded him from even discussing a potential plea agreement." (Id.) Petitioner asserts that because of this conflict, his trial counsel was required to "not only inform petitioner of this conflict," but also secure a waiver to proceed with the representation. (Id.) He claims that his trial counsel "saw no point in attempting to secure a plea agreement" due to his contentious relationship with this supervisor and therefore "never approached the district attorney's office regarding negotiating a plea agreement" despite petitioner's interest in reaching a plea agreement. (Id.)

Based on these allegations petitioner claims that his trial counsel provided ineffective assistance. The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668. To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. 466 U.S. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the

circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697). In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

In the conflict of interest context, however, a habeas petitioner is relieved of the burden of proving prejudice if he can demonstrate that his counsel labored under an "actual conflict of interest." United States v. Rodrigues, 347 F.3d 818, 823 (9th Cir. 2003) (quoting Cuyler v. Sullivan, 446 U.S. 335, 347 (1980). The Supreme Court has recognized actual conflicting interests in a variety of settings. See, e.g., Mickens v. Taylor, 535 U.S. 162, 164-65 (2002) (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case); Wood v. Georgia, 450 U.S. 261, 270-72 (1981) (suggesting a strong "possibility of a conflict of interest" when defendants were represented by a lawyer hired by their employer); Cuyler, 446 U.S. at 348 ("Since a possible conflict inheres in

8

almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial."); Holloway v. Arkansas, 435 U.S. 475, 490 (1978) (Noting that "in a case of joint representation of conflicting interests the evil - it bears repeating - is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.")).

While the word "conflict" has multiple meanings, in the context of legal conflicts of interest the Supreme Court has made it clear that "we are talking about legal conflicts of interest - an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client." Plumlee v. Masto, 512 F.3d 1204, 1210 (9th Cir. 2008). Thus an actual "conflict of interest" is a conflict of interest that adversely affects counsel's performance. Mickens, 535 U.S. at 172 n.5. "In other words, in order to succeed on a claim based on an alleged conflict, there must be a showing of an actual conflict, namely that a defendant's attorney is representing conflicting interests." Plumlee, 512 F.3d at 1210.

Here, petitioner has made no showing that his trial counsel actively represented conflicting interests. Assuming arguendo that petitioner's assertion that the District Attorney supervising his case wanted to "bury him" because of a falling out between the supervisor and petitioner's trial counsel was true, that does not mean that there was an incompatibility between petitioner's interests and those of his trial counsel. Indeed, it's quite possible that petitioner's trial counsel would have been motivated to vigorously defend petitioner to the hilt under the circumstances alleged.[3]

While petitioner argues that because his "trial counsel saw no point in attempting to secure a plea agreement based on his history with the supervisor" and that his counsel allegedly never attempted to negotiate a plea agreement, petitioner also states that his trial

---

[3] It is important to note that the performance of petitioner's trial counsel obtained a jury verdict of not-guilty on six of the eight counts petitioner faced.

9

counsel informed him that there would be no plea bargain offered, not because of the supervising Deputy District Attorney's alleged grudge against petitioner's counsel, but because petitioner was facing a third strike. (Am. Pet. at 30.) Petitioner does not dispute his trial counsel's statement in this regard. The fact that petitioner was facing a third strike conviction and therefore that no offer would be extended was in no way related to the alleged personal conflict between petitioner's trial counsel and the supervising Deputy District Attorney.

Moreover, petitioner must "prove [an] actual conflict, not just a possibility of conflict, 'through a factual showing on the record.'" United States v. Nickerson, 556 F.3d 1014, 1019 (9th Cir. 2009) (quoting United States v. Moore, 159 F.3d 1154, 1157 (9th Cir. 1998). Petitioner acknowledges that the "facts asserted . . . are based upon conversations with petitioner only." (Am. Pet. at 29.) Petitioner states that despite his attempts to do so, his trial counsel had "not been reached to provide his version of events." (Id.) Petitioner has simply provided this court no evidence, nor citation to the record, to support his claim. Rather, petitioner has merely alleged the existence of a conflict but has failed to establish that an actual conflict existed.

Indeed, the only authority cited by petitioner in support of his novel claim that an allegedly acrimonious relationship between his retained counsel and the District Attorney's Office deprived him of the effective assistance of counsel, is clearly distinguishable. In this regard, petitioner relies on the decision in Blankenship v. Johnson, 118 F.3d 312 (5th Cir. 1997). (Supp. Pet. at 15.) In Blankenship, the petitioner's court-appointed lawyer on appeal had obtained a reversal of petitioner's conviction and shortly after the argument on appeal was elected county attorney. 118 F.3d at 314. Counsel did not inform petitioner of his election and, when prosecutors sought review of the reversal, counsel did not inform his client of the petitions filed and did not take any action in response thereto. Id. at 314-15. Petitioner's conviction was then reinstated upon further review. Id. at 315. On federal habeas review, the Fifth Circuit concluded that counsel was actively representing conflicting interest since he was elected as a county attorney while the appeal was still pending and yet continued to serve as petitioner's

10

counsel without divulging his election. Id. at 315.  The court also found that counsel's performance was adversely affected by this conflict as evidenced by the fact that he did nothing on petitioner's behalf when the prosecutor's sought review of the initial reversal.  Id.  That holding, however, has no application here.  Petitioner himself concedes that his retained counsel purportedly told him of his strained relationship with his former supervisor in the District Attorney's Office.  Moreover, petitioner's counsel did not actively represent conflicting interests.  Rather, he at all times represented only petitioner.  Lastly, counsel's performance at trial on petitioner's behalf is unchallenged.[4]

        Finally, petitioner argues that "[i]f trial counsel's personal issues with the supervisor precluded him from even discussing a potential plea agreement" than his trial counsel "was required not only to inform petitioner of this conflict, but secure a waiver from petitioner to proceed with representation." (Id. at 30.)  Ignoring that petitioner's assertion in this regard begins with the qualifier "if," possibly indicating its speculative nature, petitioner has acknowledged that he was aware of the alleged conflict under which his counsel labored.  Despite that knowledge, petitioner elected to continue to have his trial counsel represent him and willingly proceeded to trial.[5]  Indeed, petitioner appears to have raised this issue for the first time in his petition for writ of habeas corpus filed in the California Supreme Court, well after his

/////

---

[4] As a practical matter, attorneys in hotly contested criminal proceedings sometimes clash with one another.  Petitioner has cited no authority, and the court has found none, that an acrimonious relationship between a prosecutor and a defense attorney can result in a "conflict" which deprives the defendant the effective assistance of counsel.  Rather, the issue of whether such acrimony may result in any cognizable claim for relief is normally addressed in the prosecutorial misconduct context.  See United States v. Brawer, 482 F.2d 117, 133 (2d Cir. 1973); see also United States v. Shaygan, 661 F. Supp. 2d 1289 (S.D. Fla. 2009).  The undersigned has reviewed the state court record in its entirety and has found no evidence of acrimony between counsel spilling over into the proceedings before the trial court.

[5] The state trial court record reflects that petitioner's trial counsel was retained and not appointed.  (See e.g. Clerk's Transcript on Appeal ("CT") at 2, 50, 60, etc.)  Thus, petitioner not only elected to allow his trial counsel to continue to represent him, but affirmatively exercised his right to be represented by counsel of his own choosing.

judgment of conviction was entered.[6]

For these reasons, the court finds that petitioner has failed to establish an actual conflict of interest and prejudice will therefore not be presumed. Therefore, to be successful on his claim of ineffective assistance of counsel petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by his counsel's deficient performance. Petitioner has failed to show either.

Here, there is no evidence before this court that the prosecution was ever willing to offer petitioner a plea bargain of any sort, let alone any evidence that such a plea offer would have been acceptable to petitioner. Any discussion regarding a possible plea offer is therefore purely speculative. Moreover, petitioner asserts that his trial counsel stated that he would not be offered a plea bargain by the prosecution because he was facing a third strike. Petitioner does not dispute his counsel's statement in this regard. Petitioner's looming third strike conviction, therefore, apparently foreclosed any possible plea bargain in this case.

With the possibility of a plea agreement foreclosed, petitioner's only viable option to avoid a third strike was, as his trial counsel apparently concluded, to proceed to trial and attempt to defend against the charges. At the conclusion of that trial, petitioner's counsel was successful in obtaining favorable jury verdicts on six of the eight counts with which petitioner was charged. While that is perhaps of little solace to petitioner because of his resulting lengthy prison sentence, it is not an insignificant in assessing counsel's performance.

---

[6] Petitioner does not claim that he raised any concern about his trial counsel's alleged conflict of interest prior to, during or after his trial. Indeed, although represented by retained counsel, petitioner wrote lengthy letters to the trial judge following his trial and before his sentencing. (CT at 234-40; see also CT 367-73; 380-88.) Nowhere in those letters did petitioner even hint that he had been interested in reaching a plea agreement or that he was in any way prevented from exploring that option due to the allegedly acrimonious relationship between his counsel and the District Attorney's Office. Moreover, this issue was not raised in the motion for a new trial filed on petitioner's behalf with the trial court. (CT 241-62; 272-80.) Finally, although respondent has not provided this court with a copy of petitioner's briefs on appeal, it also appears from the opinion of the state appellate court affirming the judgment of conviction that petitioner did not raise this issue on appeal.

Moreover, there is no evidence that the result of petitioner's case would have been different, at least in a manner beneficial to petitioner, if petitioner had the service of a different trial counsel.  Petitioner still would not have received a plea offer because he was facing a third strike and would therefore have been forced to trial.  Petitioner does not even argue that his trial counsel performed deficiently at his trial, or that a different counsel would have obtained a verdict more beneficial to petitioner.  Petitioner has therefore failed to establish that his trial counsel's performance in any way fell below an objective standard of reasonableness or prejudiced petitioner.

For the foregoing reasons, the undersigned concludes that petitioner is not entitled to federal habeas relief on his claim that his trial counsel provided ineffective assistance.

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's amended application for a writ of habeas corpus (Doc. No. 8) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.

/////
/////
/////

See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: October 12, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
whiten3039.hc